GOVERNMENT OF the
VIRGIN ISLANDS

v.

**Frederick FORTE, Appellant.**

No. 86–3262.

United States Court of Appeals,
Third Circuit.

Argued Oct. 16, 1986.

Decided Nov. 26, 1986.

Alan Ellis, David M. McGlaughlin, Ellis and Newman, P.C., Philadelphia, Pa., Michael A. Joseph, Christiansted, St. Croix, U.S. Virgin Islands, for appellant; Peter Goldberger, (argued), Philadelphia, Pa., of counsel.

James W. Diehm, U.S. Atty., D. Virgin Islands, Louis M. Fischer (argued), Atty., Dept. of Justice, Washington, D.C., for appellee.

Before GIBBONS and BECKER, Circuit Judges and FULLAM, District Judge.[*]

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Frederick Forte appeals from a judgment of sentence imposed after his conviction at a jury trial in the District Court of the Virgin Islands. He was convicted on two counts of aggravated rape, in violation of 14 V.I.C. 1700(c) (1984); one count of unlawful sexual contact in the first degree, in violation of 14 V.I.C. 1700(c) (1984); and one count of possessing a dangerous weapon during the commission of those crimes, in violation of 14 V.I.C. 2251(a)(2) (1974). Forte contends that the judgment should be vacated and the case remanded because the government's exercise of its peremptory challenges to remove all white persons from the petit jury was plain error. Alter-

natively he urges that his trial attorney's failure to challenge the government's exercise of its peremptory challenges denied him effective assistance of counsel and that failure requires remand. We find his contentions without merit, and thus we affirm.

### I.

On November 25, 1985 Forte drove to the campus at the College of the Virgin Islands on St. Thomas and stopped to ask directions of Petula Stephens, a student who was waiting for her boyfriend to pick her up after her classes at the campus bus stop. According to Stephens, after she gave Forte the requested directions, he got out of his car, approached her and at knifepoint forced her into his car. He then drove to a secluded area of St. Thomas known as Brewer's Bay where he forced Stephens to perform oral sex, then raped her and attempted sodomy as well. Afterwards, Forte drove Stephens back to the campus bus stop. Because Stephens was able to give the police a description of Forte's car and his license plate number, Forte was arrested shortly thereafter and charged with two counts of aggravated rape, one count of unlawful sexual contact in the first degree, one count of possessing a dangerous weapon, and one count of kidnapping.

During jury selection, the trial court excused several venire members who knew either Stephens or her family, and one panel member who said that he could not disregard the pre-trial publicity of the case. After consulting with counsel, the district judge then told the prospective jurors that Stephens was the niece of St. Thomas' chief of police and found that none of them would be influenced by that relationship. Additionally, the court inquired about the venire members' relationship to the witnesses or familiarity with them and excused any juror whose objectivity might have thereby been influenced. The trial court also pointed out that Stephens was a

---

[*] Hon. John P. Fullam, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

black woman who was a native of St. Thomas while Forte was a white nonresident and asked if any prospective juror felt he or she could not be impartial because of the differences between Stephens and Forte in age, race or residency. No juror responded. The court questioned the panel about attendance or employment at the college and excused one juror whose wife attended classes with Stephens. The court also excused four prospective jurors who had been victims of sexual assaults and one whose son was charged with such a crime. Finally, the trial court asked whether any venire member felt that, for any reason, he or she could not be impartial, and excused the one person who so indicated. Thereafter, both counsel exercised their peremptory challenges. Defense counsel did not object or claim that the prosecutor had stricken all the white venire members nor did Forte himself say anything.

Although Forte raised consent as a defense, after hearing all the evidence the jury found him guilty of all charges except kidnapping. Subsequently, Forte retained new counsel who for the first time at Forte's sentencing hearing attacked the prosecutor's use of her peremptory challenges. In response, the district judge reminded counsel that he had conducted a careful examination of possible prejudices and had given the prospective jurors an opportunity to state any reason they had for not serving on the jury. The district judge further stated that he had not kept a record of whether the government had challenged white jurors but that, in any event, such removal did not prejudice Forte's right to a fair trial. In a later bail hearing, the trial judge said that he had checked his notes of the voir dire proceedings and found that the government had exercised four of its six peremptory challenges to remove white persons from the jury.

## II.

Forte contends that the government's exclusion of all members of his race from the jury was unlawful 1) under the fourteenth amendment as violative of equal protection; 2) under the sixth amendment's guarantee of the right of trial by a fairly selected jury; 3) under the Jury Selection and Service Act of 1968; and 4) under the court's broad supervisory powers to ensure the fairness of juries at trials. He urges that although he failed to make a contemporaneous objection to the prosecutor's use of her peremptory challenges, he nevertheless did not waive his objection. Alternatively, Forte argues that such use of peremptories was plain error which may be noticed on appeal without having been preserved below. Fed.R.Crim.P. 52(b). Even if barred from raising the peremptory issue directly, Forte urges that trial counsel's failure to challenge the government's use of its peremptories denied him effective assistance of counsel.

### A. *Waiver*

■ We turn first to the question of whether Forte waived his objection to the prosecutor's use of her peremptory challenges by failing to make a contemporaneous objection during jury selection. While Forte concedes that he did not raise an objection at the time the peremptories were used, he nonetheless argues that his objection was still timely since it was raised at the earliest opportunity by his new counsel, albeit post-trial. We find this contention without merit. Forte's failure to object at the time the alleged error was made is in violation of the contemporaneous objection rule. In *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238–39, 60 S.Ct. 811, 851–52, 84 L.Ed.2d 1129 (1940), the Supreme Court held that "counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time" on a claim of error. That rule serves several important functions. A timely objection allows the trial court and the prosecutor to reconsider and perhaps change their course of conduct while still possible. If the defendant is successful, he avoids prejudicial error. Even if he is convicted, his timely objection delineates the points that may be appealed and avoids unnecessary

reversals because of errors that could have been averted at trial. *See United States v. Somers,* 496 F.2d 723, 742 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). Raising a timely objection also aids review on appeal because the trial court makes a timely record of the claim while the parties' recollections are still fresh. *See Gass v. United States,* 416 F.2d 767, 775–76 (D.C.Cir.1969); *United States v. Indiviglio,* 352 F.2d 276, 280 (2d Cir., 1965) (*en banc*), *cert. denied,* 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). Indeed, if Forte had made a timely objection in the present case, we would have an accurate account of the racial composition of the jury.[1]

We have stated that "[d]uring trial, the court and opposing parties are justified in expecting litigants to raise their objections at the procedurally correct moment, and in assuming that objections not so raised have been waived." *United States v. Baylin,* 696 F.2d 1030, 1036 (3d Cir.1982). Thus we find that because Forte failed to make any objection at the close of voir dire, he waived his present claim.

### B. *Plain Error*

As Forte correctly argues, despite his failure to preserve his objection, we may notice on appeal the use of the peremptories as plain error under Rule 52(b). Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). As the Supreme Court in *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) explained, "[t]he plain error doctrine of Federal Rule Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous objection requirement." *Id.* at 15, 105 S.Ct. at 1047. (footnote omitted). The Court, however, went on to define plain error as "only 'particularly egregious errors' . . . that 'ser-

iously affect the fairness, integrity or public reputation of judicial proceedings'" and cautioned that "the plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* (quoting *United States v. Frady,* 456 U.S. 152, 163 & n. 14, 102 S.Ct. 1584, 1592, & n. 14, 71 L.Ed.2d 816 (1982); *United States v. Atkinson,* 297 U.S. 157, 160 (1936)).

In light of these principles, the prosecutor's use of peremptories in this case does not indicate "plain error." While Forte intimates the possibility of racial bias among the jurors, there is no reason to believe that any such prejudice interfered with the fundamental fairness of his trial. The trial court conducted a careful examination of the venire members and in fact addressed the issue of racial prejudice with them. The venire members were given an opportunity to state that they felt they could not be impartial because of the differences between Stephens and Forte in age, race, and residency. None of them indicated that that would be a problem. In addition, the district judge asked the prospective jurors whether anyone felt he or she could not be impartial for any reason and in fact excused one person who so indicated. Indeed, Forte does not now claim that the voir dire examination was insufficient.

While Forte urges that *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), dictates that the allowance of race-based challenges should be declared plain error, we disagree. First, the defendant in *Batson,* unlike the present case, raised timely objections to the prosecutor's use of its peremptory challenges. *See id.,* 106 S.Ct. at 1725. Additionally, the Supreme Court in *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 2881 & n. 2, 92 L.Ed.2d 199 (1986) (per curiam), recognized

---

1. In a conversation outside the record, the prosecutor has stated that the jury had one white woman and another was an alternate. This is in direct contravention of the trial court's recollection of the jury make-up. While we espouse

no view on the veracity of either view, we simply point to them to demonstrate the necessity to create a full and accurate record at the time the alleged error occurred and to highlight the inadequacy of the record in the instant case.

that the new rule in *Batson* is not the sole protection of a defendant's right to a neutral factfinder. A careful voir dire examination such as the one conducted here, creates a "high probability that the individual jurors seated in a particular case were free from bias." *Allen,* 106 S.Ct. at 2881. There is no evidence that the factfinding process was tainted in the present case. Thus, we find that the prosecutor's purported dismissal of all whites from the jury did not result in plain error.[2]

Consequently, we hold that because Forte failed to preserve his objections and because we find no plain error, the *Batson* equal protection analysis under the fourteenth amendment[3] is not triggered. For the same reasons, we decline to reach the merits of Forte's other contentions: his sixth amendment challenge; the statutory challenge under the Jury Selection and Service Act of 1968; and his invocation of the court's supervisory powers.

### C. *Ineffective Assistance of Counsel*

■ Alternatively, Forte argues that he is still entitled to relief because he received ineffective assistance of counsel in the jury selection process. He asserts that he instructed his trial counsel to raise the issue of the prosecutor's use of peremptory challenges but that counsel refused to out of embarrassment or other personal reluctance. While we voice no opinion on the merits of Forte's claim, we find that he may not raise this on direct appeal. This court has clearly established that a defendant must raise ineffective assistance of counsel in a collateral proceeding under 28 U.S.C. § 2255 in order that the district court may create a sufficient record for appellate review. *See United States v. Gambino,* 788 F.2d 938, 950 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 98, 93

L.Ed.2d 49 (1986). The rationale for this policy "is that oft-times such claims involve allegations and evidence that are either absent from or not readily apparent on the record." *Id.* This is certainly such a case. The record here is devoid of any conflict between Forte and his trial counsel until his new counsel raised the issue at the sentence hearing.

Recognizing this general rule against hearing ineffective assistance of counsel claims on direct appeal, Forte asserts that his case falls within the narrow exception in *Government of Virgin Islands v. Zepp,* 748 F.2d 125 (3d Cir.1984). In *Zepp,* we held that "where an objection has been properly made at trial, or, where the record clearly shows actual conflict of interest and objections made at trial did or should have put the trial court on notice that potential conflict of interest existed, this court's 'preference' for developing such issues on collateral attack need not be followed, and a full consideration of the issue is appropriate." *Id.* at 134 (footnote omitted). Contrary to Forte's contention, this case does not fall within the *Zepp* exception.

Forte concedes that the record does not clearly show actual conflict between his interests and the self-interest of his trial counsel. Instead he asserts that the pendency of *Batson* in the Supreme Court and the recent decisions of the Second and Sixth Circuits in *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984), *vacated and remanded,* —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), and *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), *vacated and remanded,* —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), "should have put the trial court on notice that potential conflict of interest existed" *Zepp,* 748 F.2d at 134 (footnote omitted) when trial counsel did not object to the prosecutor's peremptory challenges. We disagree. The mere exist-

---

**2.** Forte also relies on *United States v. Logan,* 717 F.2d 84 (3d Cir.1983), in urging us to find plain error. In *Logan,* however, the defendant requested, but was denied, a jury instruction on the effect of character evidence. This court found plain error because a character evidence instruction was central to the case. Such is not the case here. Not only is the *Batson* rule not

central to the truthfinding process, but also Forte never alerted the trial court with respect to his concern over the removal of white jurors.

**3.** Thus, it is also unnecessary to reach the question of whether *Batson* should be applied retroactively to cases on direct appeal.

ence of cases holding that peremptory challenges of jurors may not be based solely on race need not have put the trial court on notice of a conflict. Forte ignores the possibility that his trial counsel may have agreed with the prosecutor that the chosen jurors were the best venire members for his case or that as a tactical matter, counsel may have felt it wiser not to object to the removal of all whites from his jury. We do not attempt here to offer explanations for trial counsel's behavior but rather, we only offer these possible reasons to prove our point. Nothing in the record would have alerted the trial court to any potential conflict of interest between Forte and his trial counsel. Therefore, the *Zepp* exception is inapplicable to the case before us and we conclude that Forte must pursue his ineffective assistance of counsel claim in a collateral proceeding.

### III.

We conclude that none of Forte's proffered grounds for reversal of the judgment against him have merit. The judgment will therefore be affirmed.