UNITED STATES of America, Appellee,

v.

**Douglas DOBYNES, Appellant.**

UNITED STATES of America, Appellee,

v.

**Earl WRIGHT, Jr., Appellant.**

Nos. 89–2317, 89–2435.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1990.

Decided June 15, 1990.

Leah Balk, St. Louis, Mo., for appellant Dobynes.

Daniel P. Reardon, Jr., Clayton, Mo., for appellant Wright.

Steven Holtshouser, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit Judge.

MAGILL, Circuit Judge.

Douglas Dobynes and Earl Wright, Jr., appeal from judgments of conviction entered by the district court[1] after a three-day jury trial. Both were convicted of possession of five grams or more of crack cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c). In addition, Dobynes was convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and Wright was convicted of possession of powder cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(C). Both appellants contend that the district court erred in admitting other crimes evidence. Dobynes raises a series of additional issues, including a *Batson* claim and a challenge to his sentence. We affirm.

## I.

Dobynes, Wright, and their codefendant, Alvin Johnson, were arrested on February 17, 1989, during the execution of a search warrant by officers of the St. Louis Police Department and the Drug Enforcement Administration at a house in St. Louis. Upon entering the basement of the house, the officers saw the three defendants positioned around a makeshift table. Johnson had a knife in his hand. Wright was kneeling at the table with his back to the officers. Startled by their entrance, he stood up, faced the officers, and turned back around. He then immediately turned back toward the officers with a loaded and operable .32 caliber revolver in his hand, which he subsequently dropped without discharging. A search of Wright produced four packages of powder cocaine.

When the officers entered the basement, Dobynes was holding a razor blade with crack cocaine residue on it. Dobynes stood up as the officers approached, but complied when he was ordered to lie on the floor. As he was moving to the floor, Dobynes pulled a gun from his waistband and slid it under the upholstered chair on which he

had been sitting. The officers lifted up the chair and found a loaded and operable .38 caliber revolver. In the basement the officers also found small zip-lock bags, a triple-beam scale, baking soda wrapped in plastic in a refrigerator, and a dollar bill with cocaine residue on it. A number of other people were in the basement and elsewhere in the house, but they were only secured and not arrested.

## II.

### A. Other Crimes Evidence

Both Dobynes and Wright argue that the district court committed reversible error in admitting evidence concerning their prior arrests for possession of cocaine. These arrests were made on January 20, 1989, during the execution of a search warrant by St. Louis police at the same house where Dobynes and Wright were arrested on February 17, 1989. A detective testified that as he and other officers approached the house on January 20, he saw a man with money in his hand standing at the side entrance that led to the basement. The man ran off when he saw the officers. Wright was found standing in the doorway with a small cellophane bag of cocaine in his hand. The detective grabbed the bag from Wright and led him down the steps to the basement. As they were going down the steps, Wright took a bag containing thirteen more small cellophane bags of cocaine out of his pocket and threw it against the wall. Dobynes and two others were found in the basement sitting around the makeshift table. Upon seeing the detective, Dobynes picked up a cellophane bag of cocaine off the table, tore off its corner, and threw it against the wall. Wright and Dobynes were both placed under arrest. A search incident to Dobynes' arrest uncovered $1,000 in small denomination bills hidden in his underwear.

 The requirements for the admission of other crimes evidence are well established. Such evidence is admissible un-

---

**1.** The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

der Fed.R.Evid. 404(b) if it is (1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other crime; and (4) more probative than prejudicial. *See United States v. Anderson*, 879 F.2d 369, 378 (8th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). Rule 404(b) is a rule of inclusion, permitting admission of other crimes evidence unless it tends to prove only the defendant's criminal disposition. *United States v. O'Connell*, 841 F.2d 1408, 1422 (8th Cir.), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). "The trial court is vested with broad discretion in determining whether to admit wrongful act evidence, and its decision will not be overturned unless it is clear that the evidence had no bearing upon any of the issues involved." *Id.* Where intent is an element of the crimes charged, "evidence of other acts tending to establish that element is generally admissible." *United States v. Miller*, 725 F.2d 462, 466 (8th Cir.1984).

■ Applying these standards, we find that the district court did not abuse its discretion in admitting the other crimes evidence. Dobynes and Wright do not contend the evidence was insufficient to support a jury finding that they committed the January 20 crimes. This evidence was relevant to showing that they had both the requisite knowledge and the intent to distribute on February 17, and served to counter their mere presence defense. The evidence possessed considerable probative value with respect to these issues, particularly since the other crimes were strikingly similar to the drug offenses charged in this case and occurred only four weeks earlier. We cannot say the court abused its broad discretion in determining that this probative strength was sufficient to outweigh the potential for unfair prejudice. The court refused to permit the government to introduce evidence regarding the arrest of Wright and Johnson in November 1988 for possession of cocaine, and properly instructed the jury on the limited purposes for which the evidence of the January 20 incident could be considered.

### B. Admission of Gun and Other Physical Evidence

■ Dobynes asserts that the district court erred in admitting into evidence the .38 caliber revolver, the crack cocaine, the razor blade and dollar bill with cocaine residue on them, and the triple-beam scale. Dobynes argues that there was no evidence linking him to these items and that his presence in the basement did not provide a sufficient basis for admitting them. This argument is wholly without merit. One of the officers who executed the search warrant testified that he saw Dobynes remove the revolver from his waistband and slide it under the chair on which he had been sitting. Another officer testified that he observed Dobynes with the razor blade in his hand. The crack cocaine was found on the table at which Dobynes was seated when the officers entered and the dollar bill was found on a plate near the table. The triple-beam scale was discovered in the same basement where Dobynes was arrested. In light of all the other evidence, the scale was certainly probative of Dobynes' intent to distribute the crack cocaine that he jointly possessed with the other defendants.[2]

### C. Mere Presence Instruction

■ The district court refused Dobynes' proposed mere presence instruction, giving instead the following instruction:

The mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant, not merely a knowing spectator.

---

**2.** Contrary to Dobynes' view, the admissibility of the above evidence is not governed by Rule 404(b). The items are not evidence of other crimes, wrongs, or acts, but rather are proof of Dobynes' commission of the crimes with which he was charged. *See United States v. Brownlee*, 890 F.2d 1036, 1039 (8th Cir.1989).

May 3, 1989 Tr. at 39. Dobynes argues that this instruction was insufficiently clear and not worded in strong enough language, particularly because it did not state that the defendant must have been a "willful and knowing" participant. This argument lacks merit. In addition to its mere presence instruction, the court gave several instructions informing the jury that the government had to prove intent and knowledge beyond a reasonable doubt. We find no error because a defendant is not entitled to a particularly worded mere presence instruction where the instructions given by the court adequately and correctly cover the substance of his defense. *United States v. Manning,* 618 F.2d 45, 48 (8th Cir.1980) (per curiam). Moreover, Dobynes was not entitled to have his mere presence defense emphasized to a greater extent than it was. *See United States v. Graham,* 548 F.2d 1302, 1312 (8th Cir.1977).

### D. Identity of Informant

■ We also find no merit in Dobynes' contention that the district court committed reversible error in refusing to require the government to disclose the identity of the confidential informant who gave the tip underlying the February 1989 search warrant. Disclosure of a confidential informant's identity as a material witness "will not be ordered unless it is vital to a fair trial." *United States v. Bourbon,* 819 F.2d 856, 860 (8th Cir.1987). As in *Bourbon,* disclosure in this case "was not vital to a fair trial, because the informant was a 'tipster,' i.e., a person who merely conveys information but does not witness or participate in the offense." *Id.; see also United States v. Lewis,* 892 F.2d 735, 737 n. 4 (8th Cir.1989) (same).

### E. *Batson* Claim

■ Dobynes, who is black, argues that the district court erred under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by failing to require the government to provide reasons for exercising peremptory strikes against black members of the venire. However, Dobynes first raised this issue in his motion for a new trial, approximately one week after the jury's verdict. We hold that Dobynes' *Batson* objection was untimely.

The Supreme Court's analysis in *Batson* envisioned a "timely objection" to the government's use of peremptory challenges. 476 U.S. at 99, 106 S.Ct. at 1724–25; *see also United States v. Young–Bey,* 893 F.2d 178, 179 (8th Cir.1990) (noting that "defense counsel made a timely *Batson* objection"). The Court stated that the petitioner's objection, made before the jury was sworn, was a timely one. 476 U.S. at 83, 100, 106 S.Ct. at 1715–16, 1725.[3] The Fifth Circuit has held that in order to be timely, a *Batson* objection "must be made before the venire is dismissed and before the trial commences." *United States v. Romero–Reyna,* 867 F.2d 834, 837 (5th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990); *see also Government of Virgin Islands v. Forte,* 806 F.2d 73, 76 (3d Cir.1986) (defendant who first raised *Batson* objection at sentencing hearing waived claim because of failure "to make any objection at the close of voir dire"). It is certainly preferable that the objection be made prior to dismissal of the venire, but we need not decide here the precise point beyond which a *Batson* objection will be untimely. It clearly comes too late if not made until after the trial has concluded. *See Thomas v. Moore,* 866 F.2d 803, 804–05 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989); *Munn v. Algee,* 730 F.Supp. 21, 29 (N.D.Miss.1990). At that point, the only remedy for purposeful discrimination against black venirepersons is reversal of the conviction, whereas a timely objection allows the trial court to remedy the discrimination prior to the commencement of trial. *See United States v. Forbes,* 816 F.2d 1006, 1011 (5th Cir.1987). More-

---

**3.** In *Reynolds v. City of Little Rock,* 893 F.2d 1004, 1009 (8th Cir.1990), we concluded that a *Batson* objection was preserved for appeal where the district court treated it as timely even though it was not made until after the jury had been sworn. *See also United States v. Thompson,* 827 F.2d 1254, 1257 (9th Cir.1987) (holding that *Batson* objection made immediately after jury sworn was timely).

over, when the objection is not made until well after completion of the jury selection process, the recollections of the parties and the trial court may have dimmed, making the creation of an adequate record for review more difficult. *See Forte,* 806 F.2d at 76 & n. 1.

■■■■ We agree with the Third Circuit that despite the absence of a timely objection, the government's use of peremptories may be noticed on appeal as plain error under Fed.R.Crim.P. 52(b). *Forte,* 806 F.2d at 76. Dobynes' claim rests solely on his allegation that the government used peremptory strikes against two of the five blacks on the venire.[4] Because the record does not disclose any miscarriage of justice resulting from these strikes, we find no plain error. *See United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

### F. Refusal to Depart from Guidelines

■■■■ Following the trial, Dobynes agreed to cooperate in the government's investigation of drug trafficking. Asserting that he made a good faith effort to provide substantial assistance to the government, Dobynes argues that the district court erred in refusing to reduce his sentence under § 5K1.1 of the Sentencing Guidelines. However, a district court's refusal to depart from the Guidelines pursuant to § 5K1.1 is nonreviewable. *United States v. Cloughley,* 901 F.2d 91, 94 (8th Cir.1990). Even if it were reviewable, the court had no authority to even consider a downward departure under § 5K1.1 in this case because the government did not make a § 5K1.1 motion.[5] *United States v. French,* 900 F.2d 1300, 1302 (8th Cir.1990); *United States v. Smitherman,* 889 F.2d 189, 191 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990).

### III.

For the foregoing reasons, the convictions and Dobynes' sentence are affirmed.

---

4. The government contends that there were seven blacks on the venire. This dispute, which is not resolved by the voir dire transcript, illustrates the importance of a timely *Batson* objection to the creation of an adequate record for appellate review.

5. We note that a § 5K1.1 motion may not be necessary if the government's refusal to make such a motion violated the defendant's right to due process. *See United States v. Coleman,* 895 F.2d 501, 504 n. 6 (8th Cir.1990). Because Dobynes has not alleged any due process violation, we do not address this issue. *Id.*