**Weldel BASTIEN, Petitioner,**

v.

**Martin DRAGOVICH, et al., Respondents.**

No. 3:CV–98–1716.

United States District Court,
M.D. Pennsylvania.

Dec. 15, 2000.

charge of aggravated assault in the Court of Common Pleas of Lycoming County, Pennsylvania.

Bastien's *pro se* habeas corpus petition asserted a number of discrete grounds for claiming that his convictions were constitutionally infirm. By Memorandum and Order filed March 31, 2000, all but two of the claims presented by Bastien were rejected as without merit. One of the two remaining claims—ineffective assistance of trial counsel in not requesting a jury instruction on the relevance of the fact that the victim of Bastien's assaults had been convicted of aggravated assault several years before Bastien's altercations with her—was found not to have been presented to the state courts and could not now be raised in the state courts because it was barred by the applicable statute of limitations. As to this claim, the parties were directed to address the question of whether petitioner could nonetheless seek an adjudication of this issue in federal court under the "cause and prejudice" or "fundamental miscarriage of justice" standards for excusing a habeas corpus petitioner's state procedural default. As to the remaining issue (whether trial counsel had been ineffective in failing to preserve an equal protection challenge to the prosecutor's exercise of a peremptory strike of a prospective juror), the parties were directed to address both the justiciability of the matter in federal court under the exhaustion of state court remedies jurisprudence, as well as the merits of the claim.

Weldel Bastien, Frackville, PA, pro se.

Daniel Edward Holmes, Lycoming County Dist. Atty., Williamsport, PA, for respondent.

**MEMORANDUM**

VANASKIE, Chief Judge.

This is a habeas corpus proceeding under 28 U.S.C. § 2254. Petitioner, Weldel Bastien, challenges his convictions on multiple charges of simple assault and a single

As to the first of the two remaining claims, Bastien concedes that he cannot show "cause" for the failure to preserve the issue in the state courts, but argues that failure of this Court to address the issue would result in a "fundamental miscarriage of justice." As to the ineffective assistance claim based upon a failure to object to an alleged discriminatory removal of a prospective juror, Bastien claims that the issue was fully exhausted in the state courts.

Having carefully reviewed the record, I find that Bastien has failed to show that the absence of a jury instruction on the effect of his victim's aggravated assault conviction "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Accordingly, failure to address this issue will not result in a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). As to the ineffective assistance claim based upon a failure to object to the prosecutor's exercise of a peremptory challenge, I find that the claim was not properly raised at each level of the state court system, that Bastien is now procedurally barred from raising the matter in the state courts, and that he has not presented grounds for excusing this state law procedural default. Accordingly, his ineffective assistance claim is not justiciable in this § 2254 proceeding.

## I. BACKGROUND

Bastien was involved in a long-term relationship with Valerie Dorsey which began in 1989 and continued on and off until 1994, when Bastien was convicted in state court on the charges of assaulting Dorsey. On at least two occasions prior to the filing of the charges at issue in this case, Bastien was convicted of assaulting Dorsey. He was also the subject of two Protection from Abuse Orders obtained by Dorsey.

The incidents underlying the convictions at issue in this petition occurred from September 14, 1993 to March 25, 1994. During this period, Dorsey sought medical treatment at Divine Providence Hospital ("DPH") for various injuries that she claimed were inflicted by Bastien. On at

least two occasions, Dorsey suffered a broken nose. On another occasion, she suffered a "bilateral fracture of both sides of her lower jaw." *Commonwealth v. Bastien*, Nos. 94–10, 624 & 94–11, 203, at 5 (Court of Common Pleas, Lycoming County, Pennsylvania, May 2, 1995). This injury resulted in the aggravated assault charge.

Also during this period, on September 19, 1993, Bastien, himself, sought care in the emergency room of DPH; the staff there treated him for an apparent knife wound to the foot. A police officer spoke with Bastien when Bastien was in the hospital, and Bastien reported that Dorsey had stabbed him, but Bastien also stated that he did not wish to press charges.

Bastien was charged with simple assault in separate counts with respect to incidents that occurred on the following dates: September 14, October 14, and November 13, 1993, and January 22, February 22, and March 25, 1994. The incident giving rise to the charge of aggravated assault—during which Dorsey's jaw was fractured—occurred on February 19, 1994.

Bastien did not object to the consolidation of the simple assault charges with the aggravated assault charge for purposes of trial. Jury selection occurred on September 19, 1994. Bastien, who is a native of Haiti and an African American, claims that the prosecutor used a peremptory challenge to strike the only African American on the jury panel. Bastien also contends that his attorney did not assert an objection to the exercise of the peremptory strike or ask the trial court to require that the prosecutor provide a race-neutral justification for removing the sole African American on the jury panel.[1]

---

1. The record produced by the office of District Attorney of Lycoming County includes only a small portion of the transcript of jury selection. (*See* A30–35 of the Supplemental Record filed on July 27, 2000 (Dkt. Entry 23).) The part of the jury selection process that was transcribed consists only of the trial court's introductory remarks and the trial

judge's question pertaining to the anticipated duration of the trial. The record indicates that jury selection commenced at 11:11 a.m. and concluded at 12:30 p.m. The record does not include the questions asked by counsel, the jurors' responses, and any objections interposed by counsel. The record does include, however, the affirmative responses of

Defense strategy at trial included attacking the credibility of the victim and portraying her as an aggressive person with violent propensities. In this regard, the defense introduced the victim's 1987 conviction for aggravated assault. Evidence was also presented with respect to the alleged incident on September 19, 1993, when Bastien claims he was stabbed by Dorsey. In addition to testifying about this incident, Bastien denied hitting Ms. Dorsey on all but two of the occasions that formed the bases of the charges. As to the two times he admitted hitting Dorsey, Bastien claimed he acted in self defense. As to the other occasions, Bastien attempted to explain Dorsey's injuries by saying that someone else had attacked her. With respect to the aggravated assault charge, Bastien claimed that he had acted in self defense when Dorsey grabbed the back of his shirt with his back to her. He said that he feared she had a knife, and that he had turned and swung his hand with the intention of breaking free from her grasp, not with the intent to hit her in the face. (Trial Transcript (Tr.) at 161–64, A189–92.)[2] As to Dorsey's claim that Bastien again struck her in the face on February 22, 1994, Bastien claimed that Dorsey had walked into the edge of a door. (*Id.* at 170–71, A198–99.)

At the conclusion of the trial, the court instructed the jury on the elements of the crimes of simple assault and aggravated assault. As to the two occasions on which Bastien claimed to be acting in self-defense (October 14, 1993 and February 19, 1994), the trial court instructed the jury on the government's burden to prove beyond a reasonable doubt that Bastien was not acting in self-defense. (Tr. at 283–85, A311–13.) In the course of instructing on self-defense, the trial court explained that the jury could consider the defense evidence that on September 19, 1993, Dorsey had stabbed Bastien, explaining that the jury could consider such evidence "as relevant to the reasonableness of the Defendant's determination on February 19, 1994, and October 14, 1993 that force was reasonably necessary to protect himself against the use of force by Valerie Dorsey . . . ." (*Id.* at 284, A312.) The trial court, however, did not instruct the jury on the relevance of Dorsey's 1987 conviction for aggravated assault to Bastien's self-defense claims.

The jury found Bastien guilty of the one count of aggravated assault, in violation of 18 Pa.C.S.A. § 2702(a)(1), and six counts of simple assault, in violation of 18 Pa.C.S.A. § 2701(a)(1). The jury acquitted Bastien of one count of simple assault and two counts of stalking. (*Id.* at 316, A347.) On January 17, 1995, the trial court sentenced Bastien to an aggregate prison term of six and one-half (6½) to fourteen (14) years.

Acting on Bastien's post-trial motion indicating that he wanted to consider issues of ineffective assistance of trial counsel, the trial court appointed new counsel for Bastien. (A353.) On February 16, 1995, Bastien's new attorney filed a notice of appeal to the Superior Court of Pennsylvania. (A396.) Pursuant to Rule 1925(b) of

---

both the prosecutor and defense attorney to the trial court's inquiry as to whether they were "satisfied the jury is correctly seated." (A34.)

According to an affidavit submitted by the Court Administrator for Lycoming County, it is the practice in Lycoming County to transcribe jury selection proceedings only if specifically requested by either party at the time the trial transcript is ordered. The Court Administrator further avers that it is "a long standing policy of Lycoming County Courts that once a case is transcribed, the Court Reporter Notes are kept for thirty (30) days and are destroyed in the normal course of business." (A1.) Finally, the Court Administrator states that, despite diligent efforts, he has been unable to locate the Court Reporter Notes, including the Notes of jury selection, for Bastien's case. Nor has a list of the prospective jurors for Bastien's case been produced. Thus, there is no record to substantiate Bastien's assertions with respect to jury selection.

2. Where appropriate, the record will be cited by both the page number of the trial transcript and the pagination used in Respondent's Supplemental Record.

the Pennsylvania Rules of Appellate Procedure, Bastien's new attorney filed on March 9, 1995, a statement of the issues he intended to present to the Superior Court. (A403–06.) Among the many issues identified by defense counsel was the alleged ineffectiveness of trial counsel in not requesting a change of venue "made necessary by a white woman charging a black man of assault in a county reported to have all-White juries who are prejudiced against Blacks." (A405.) No mention was made in this statement, however, as to the existence of a claim that trial counsel purportedly failed to preserve an objection to jury selection based upon *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Pursuant to Pa.R.A.P.1925(a), the trial court, on May 2, 1995, issued an opinion responding to the statement of matters that defense counsel intended to pursue. (A408–22.) In rejecting claims of ineffective assistance of trial counsel, the court observed that trial counsel had "put on a vigorous defense," raising self-defense to several charges, attacking the victim's credibility and objecting to introduction of evidence of Bastien's prior convictions for assault and his violations of "protection from abuse" orders. (A.417–18.) No mention was made in the trial court opinion as to any issues relating to jury selection.

In the brief filed in support of Bastien's appeal to the Superior Court, Bastien asserted the ineffective assistance of trial counsel in numerous respects. One of the alleged bases for ineffective assistance was trial counsel's failure "to object to the prosecution's reference to Bastien's Haitian heritage which was a prejudicial reference in light of this country's attitude against Haitians." (Appellant's Brief in Superior Court of Pennsylvania, Dkt. No. 257 HBG 95, at 13 (A436).) Appellate counsel also faulted trial counsel for failure "to point out the disparate treatment between [Dorsey] (White) and [Bastien] (Black) as the DA permitted [Dorsey] to file charges against [Bastien] but would

not permit [Bastien] to file charges against [Dorsey] for stabbing him." In amplifying on his race-based arguments, appellate counsel asserted that trial counsel's assistance was defective "in failing to object to the references by the prosecution to Appellant's Haitian background in a community of jurors wreaking [sic] with racial prejudice. . . ." (*Id.* at 16, (A432).) Once again, however, the appellate brief made no mention of any issue relating to jury selection based upon a failure to preserve a *Batson* claim.

In an unpublished opinion filed on February 13, 1996, the Superior Court affirmed Bastien's convictions. In addressing Bastien's claims of ineffective assistance based upon a failure to object to remarks concerning Bastien's heritage, the appellate court stated:

> Apparently, appellant believes that he was discriminated against because he is a black Haitian and Ms. Dorsey is white. As such, appellant contends that his trial counsel was ineffective in failing to protect his rights in this regard. After thoroughly reviewing the record, however, we have found no instances of discrimination against appellant. Thus, this issue also lacks arguable merit.

(Superior Court Opinion at 9 (A471).)

Bastien did not petition the Pennsylvania Supreme Court for allowance of appeal, but instead proceeded to file a motion in the trial court under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541, *et seq.* New counsel was appointed for Bastien, and the court directed that counsel file an amended PCRA petition. In July of 1996, counsel filed an amended PCRA motion, appended to which was Bastien's *pro se* statement of the grounds on which he was challenging his convictions. Among the numerous grounds raised by Bastien was the alleged ineffective assistance of trial counsel in failing "to move for a *Batson*-hearing at voir dire to demonstrate that the jury venire did not represent a fair cross-section of the community and excluded Blacks. . . ."

(Bastien's Facts Material to a Consideration of Questions Presented at 2 (A504).) Bastien also challenged the effectiveness of his appellate counsel, but did not list as one of the instances of purported ineffective assistance the failure of appellate counsel to raise ineffectiveness of trial counsel with respect to the *Batson*-related issue.

In an Opinion and Order filed on January 10, 1997, the trial court signaled its intention to deny the PCRA petition without a hearing. The trial court's treatment of Bastien's complaints concerning the composition of the jury consisted of the following:

> The Superior Court at p. 9 of its opinion notes that nothing in the record indicates any discrimination against Defendant because of his race or heritage. Moreover, Defendant in his post conviction petition offers no facts that point to jury impropriety or prejudice. He simply complains that no black members were seated on the jury. [A571–72.]

It appears that on January 10, 1997, Bastien wrote to the trial court, asking for a copy of the transcript of voir dire in light of "the racial composition of the jury issue raised...." (A642.) [3] It also appears that Bastien responded to the January 10, 1997 Order by assailing the effectiveness of PCRA counsel. (A623–26.) [4] The trial court did not address Bastien's request for a transcript of jury selection or his complaints about PCRA counsel. By order dated January 27, 1997, the trial court denied Bastien's PCRA petition. (A566–67.)

Proceeding *pro se*, Bastien appealed the denial of his PCRA petition to the Pennsylvania Superior Court. (A 575.) In the brief filed in support of his appeal, Bastien limited his arguments to the effectiveness of PCRA counsel, asking that the trial court ruling be reversed and the matter remanded "for a[new] PCRA process with new counsel appointed with instructions to provide appellant with effective assistance of counsel." (Brief of Appellant, Superior Court of Pennsylvania, Dkt. No. 00130HBG97, at 9 (A592).) Bastien did not directly challenge the trial courts' decision with respect to jury composition issues. He did, however, note that he had "begged [PCRA counsel] for copies of the jury selection and other important trial transcripts," (*id.* at 6, A589), and that PCRA counsel had "refused to help appellant secure documentary evidence such [as] a jury selection transcript ... in support of his claims relating to an issue regarding the impropriety of jury composition." (*Id.* at 8, A591.)

In an unpublished opinion filed on November 13, 1997, the Superior Court rejected Bastien's appeal, explaining:

> Appellant essentially claims that PCRA counsel provided ineffective assistance since counsel refused to permit him to review the amended petition for relief and failed to send him records and transcripts so that he could argue matters himself. Appellant, who points to no specific issues which counsel neglected to raise in the amended petition, thus contends that he is entitled to remand for additional PCRA proceedings with new counsel.

> In order to be eligible for relief, a post-conviction petitioner must plead and prove ... that his conviction or sentence resulted from one of several circumstances including ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *See* 42 Pa.C.S. § 9543(a)(2). In the present case, appellant challenges the effectiveness of the assistance provided by PCRA coun-

---

3. The letter in question is included in the Reproduced Record filed by Bastien in connection with his appeal from the trial court's denial of his PCRA petition.

4. This document is also included in the appellate court Reproduced Record.

sel. However, he supports that claim by noting only that counsel refused to submit the amended post-conviction petition to him for review and failed to provide certain records and transcripts. Since appellant makes no reference to any claim relating to his trial, we fail to see how his assertion of ineffectiveness implicates the truth-determining process. Accordingly, the assertion is not cognizable and need not be addressed further. [A668–69.]

Bastien, continuing to proceed *pro se*, then filed a petition for allowance of appeal with the Pennsylvania Supreme Court. His original petition sought review only with respect to his challenge to the assistance rendered by PCRA counsel. (A672–75.) On January 15, 1998, Bastien moved for leave to amend his petition, seeking to add claims that trial and appellate counsel were ineffective in failing to raise the *Batson*-related issue. With respect to this matter, Bastien complained:

> Instant record further reveals that there was a direct conflict of interest between the Court and Trial Counsel ... in defense of his client Weldel Bastien, ... when Trial Counsel ... willfully refused to move to have said all white bias jury discharged on the grounds that District Attorney ... purposefully and discriminatorily excluded the only African American juror on account of her race; and further when he refused to raise the *Batson* issue on Direct Appeal thereby DENYING appellant of his 6th Amendment right to effective assistance of counsel and a fair trial. [A695.]

By Order dated April 15, 1998, the Pennsylvania Supreme Court denied Bastien's petition for allowance of appeal without

acting upon Bastien's motion for leave to amend.

On October 20, 1998, Bastien filed the present habeas petition. On November 19, 1998, he filed an amended petition. As noted above, by Memorandum and Order filed March 31, 2000, all but two of Bastien's claims were rejected as being without merit.[5] In a memorandum of law filed on May 16, 2000, Bastien addressed the questions pertinent to the justiciability of his remaining two claims. On July 27, 2000, following several extensions of time, the Lycoming County District Attorney's office supplemented the record by providing the trial court record as it existed. Included in the supplemental record are all the pertinent filings made in connection with Bastien's direct appeal, his PCRA petition, and the appellate court proceedings in connection with the PCRA petition.[6] The record is now sufficiently complete to permit resolution of the question of whether Bastien's remaining claims may be considered by a federal court.

## II. DISCUSSION

### A. Ineffective assistance of counsel relating to the absence of a jury charge on the pertinence of Dorsey's 1987 aggravated assault conviction

As indicated in the March 31, 2000 decision of this Court, Bastien did not pursue before any Pennsylvania court a claim of ineffective assistance of counsel with respect to the absence of a jury charge explaining the relevance of Dorsey's 1987 aggravated assault conviction to Bastien's self-defense claims. The March 31, 2000 decision, relying upon *Lines v. Larkins*,

---

5. The claims that were rejected in the March 31, 2000 Memorandum and Order were (1) the state trial court lacked jurisdiction; (2) trial counsel was ineffective in (a) failing to object to the joinder of the two criminal complaints filed against Bastien, (b) failing to object to testimony provided by a Williamsport Police Officer, and (c) failing to subpoena witnesses and hospital records that could have corroborated Bastien's testimony that

Dorsey had stabbed him; (3) perjury committed by the victim; (4) prosecutorial misconduct in various respects; and (5) ineffective assistance of appellate counsel.

6. As noted above, absent from the trial court record is a complete transcript of jury selection.

208 F.3d 153 (3d Cir.2000), further found that Bastien was now procedurally barred from presenting such a claim in the state courts.[7] Under these circumstances, "federal habeas review ... is barred unless the prisoner can demonstrate cause for the [state procedural] default and actual prejudice as a result of alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Bastien concedes that he cannot show "cause" for the failure to raise the ineffective assistance issue concerning the jury instruction. (Bastien Memorandum of Law filed May 16, 2000 (Dkt. Entry 19) at 7.) Bastien does maintain, however, that he can show that a failure to consider this claim will result in a "fundamental miscarriage of justice."

■ The "fundamental miscarriage of justice" basis on which to allow a federal court to consider a challenge to a conviction that cannot be presented to the state courts is intended for the truly extraordinary case, one where there is a showing of "actual innocence" by the petitioner. *Werts v. Vaughn,* 228 F.3d 178, 193 (3d Cir.2000). A petitioner must show that, absent the alleged constitutional error, "it is more likely than not that no reasonable juror would have convicted him...." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). It is not enough to show that a reasonable doubt is conceivable; instead, the habeas petitioner "must prove that it is more likely than not that no reasonable juror would have convicted him." *Werts,* 228 F.3d at 193. As explained in *Schlup:*

It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that ... no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. 513 U.S. at 329, 115 S.Ct. 851.

In making this "probabilistic" determination, the court is to presume "that a reasonable juror would consider fairly all of the evidence presented," and "would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.* The court may also make credibility assessments. *Id.* at 330, 115 S.Ct. 851. The focus of the judicial inquiry is "on the likely behavior of the trier of fact." *Id.*

■ Bastien contends that a proper charge on the relevance of Dorsey's 1987 aggravated assault conviction would have alerted the jury to the significant relationship between the fact of Dorsey's conviction and Bastien's purported reasonable belief of harm central to the self-defense claims. Bastien argues that "[i]t is more likely than not that no juror, acting reasonably and *properly instructed on the relevancy between Dorsey's 1987 assault conviction and [Bastien's] state of mind,* would have voted to find [him] guilty...." (Bastien's May 16, 2000 Memorandum of Law (Dkt. Entry 19) at 13; emphasis in original.)

An assessment of the record does not support Bastien's assertion. First, Bastien asserted self-defense as to only two of the multiple assault charges, the October 14, 1993 and February 19, 1994 altercations. Thus, the absence of the alleged jury instruction does not impugn the jury's results with respect to five of the six convictions of simple assault. Second, this is

**7.** Bastien does not dispute the finding that a claim of ineffective assistance with respect to the absence of a jury charge on the significance of Dorsey's aggravated assault convic- tion was never presented to the state courts. Nor does he contest the finding that such a claim is now barred in the state courts by the applicable statute of limitations.

not a case where the victim and the defendant gave similar accounts of the incidents and the key question is the reasonableness of the amount of force used by the defendant. For example, as to the October 14, 1993 incident, Dorsey testified that she was hit multiple times in the face, sustaining injuries that required medical attention. (Tr. 90–91, A118–19.) Bastien claimed that he only slapped her in the face after she had hit him with an ashtray. (Tr. 156–57, A184–85.) As to the February 19, 1994 altercation that gave rise to the aggravated assault charge, Dorsey testified that she was struck multiple times in the face, resulting in fractures on both sides of her jaw. (Tr. 95–97, A123–25.) Bastien claimed that he struck her after she grabbed the back of his shirt and he feared that she may be holding a knife. (Tr. 162–64, A190–92.) The jury was called upon to decide whose version was more accurate. In this regard, the jury was aware of Dorsey's 1987 aggravated assault conviction. It was also aware of the fact that Dorsey had obtained protection from abuse orders against Bastien and that Bastien had entered a plea of guilty to a charge of assaulting Dorsey in 1991 and a plea of no contest to a charge of assaulting Dorsey in 1992. (Tr. 80–85, A108–13.) The jury was also presented with testimony and evidence that corroborated Dorsey's testimony that she sustained on more than one occasion a fractured nose, that her jaw was fractured on both sides, requiring that it be wired shut, and that her eyes were blackened as a result of Bastien's blows. (Tr. 14–24, A42–52; Tr. 43–45, A71–73; Tr. 57–61, A85–89.) Such evidence contradicted Bastien's assertions that he merely slapped the plaintiff on October 14, 1993 and accidently struck her in the face while turning around on February 19, 1994. Bastien's account of Dorsey walking into a door was implausible, as was much of his testimony. Finally, the jury was fully instructed on the matter of self defense, and specifically informed that it could consider defendant's testimony that on September 19, 1993, there was an incident when Dorsey stabbed Bastien. The trial court explained that such testimony could be considered as "relevant to the reasonableness of the Defendant's determination on February 19, 1994, and October 14, 1993 that force was reasonably necessary to protect himself against the use of force by Valerie Dorsey...." (Tr. at 284, A312.) The instruction that Bastien claims was required would have been cumulative of the instruction actually given. In this regard, the jury was effectively told that it could consider evidence of the victim's violent propensities in assessing whether the Commonwealth had shown beyond a reasonable doubt that Bastien was not acting in self defense. Given the severity of Dorsey's injuries on the two occasions when Bastien contends he was acting in self defense, as well as the implausible explanations proffered by Bastien, the additional charge that Bastien says was required would not have caused a reasonable juror to acquit Bastien on the charges stemming from the October 14, 1993 and February 19, 1994 incidents. Stated otherwise, Bastien has failed to show that it is probable that no reasonable juror would have convicted him in the light of the jury instruction that he says was required. Because Bastien has thus failed to establish a "fundamental miscarriage of justice" if his ineffective assistance of counsel claim concerning jury instructions is not addressed, the interests of federalism and comity advanced by the exhaustion doctrine require that litigation of this claim in this federal habeas corpus proceeding be foreclosed.

## B. Bastien's *Batson*-related claims

Bastien contends that the "District Attorney ... purposefully and discriminatorily used one peremptory challenge to remove prospective juror number thirty (30), an African American female, from petitioner's jury venire on account, of her race...." (Dkt. Entry 1 at ¶ 14(c); emphasis in original.) In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court held that a

criminal defendant may establish a prima facie case of racial discrimination in jury selection by showing that (1) he is a member of a cognizable racial group, (2) the prosecutor exercised peremptory challenges to remove members of a particular race from the jury panel, and (3) those facts and other circumstances raise an inference of unlawful racial exclusion. *Id.* at 96, 106 S.Ct. 1712.

 Federal law provides that the failure to make a timely objection during jury selection waives a *Batson* claim. *Government of the Virgin Islands v. Forte,* 806 F.2d 73, 74–76 (3d Cir.1986). In *Ford v. Georgia,* 498 U.S. 411, 422–23, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), the Court recognized that "a state court may adopt a general rule that a *Batson* claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected." Thus, courts generally find a *Batson* issue waived if a timely objection is not asserted. *See Morning v. Zapata Protein (USA), Inc.,* 128 F.3d 213, 216 (4th Cir.1997). Pennsylvania law requires that a defendant make an adequate record to preserve a *Batson* issue. *See Commonwealth v. Holloway,* 559 Pa. 258, 270, 739 A.2d 1039, 1045 (1999). Because no such record was made in this case, the Pennsylvania courts undoubtedly would hold that the *Batson* issue was not preserved.

Bastien nonetheless insists that the Pennsylvania Superior Court addressed the merits of his *Batson* claim on his direct appeal from his conviction. This position is untenable. First, Bastien concedes that "there was no specific *Batson* claim (ineffective or otherwise) presented on [his] direct appeal." (Bastien Memorandum of Law filed May 16, 2000 (Dkt. Entry 19) at 14.) The fact that the Superior Court panel observed that "[a]fter thoroughly reviewing the record, . . . we have found no instances of discrimination against [Bastien]," cannot be understood to comprehend an unarticulated *Batson* claim. In this regard, Bastien has not shown that

the record before the Pennsylvania Superior Court included the jury selection process, and, as noted above, the affidavit of the Lycoming County Court Administrator dispels any inference that the record before the Superior Court included a transcript of jury selection. Accordingly, it cannot be concluded that the Superior Court considered a *Batson* claim in the context of Bastien's direct appeal.

It is thus clear that Bastien suffered a procedural default of any *Batson* claim in the state courts. *Cf., Sistrunk v. Vaughn,* 96 F.3d 666, 674–75 (3d Cir.1996) (failure to pursue on direct appeal a *Batson* issue foreclosed consideration of such a claim in a PCRA proceeding). A consequence of the failure to preserve the *Batson* issue in state court is that, "absent a showing of cause and prejudice or a demonstration that [Bastien] was innocent of the crimes for which he was convicted," *id.* at 675, consideration of the *Batson* claim in this federal habeas corpus proceeding is foreclosed.

 Bastien suggests that he satisfies the "cause" requirement by showing ineffective assistance of the attorneys who represented him at trial and on appeal. Ineffective assistance of counsel may constitute "cause" sufficient to excuse a procedural default. *Coleman v. Thompson* 501 U.S. at 750, 111 S.Ct. 2546; *Werts,* 228 F.3d at 193. The doctrine of exhaustion of state court remedies, however, "requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639 (1986); *Werts,* 228 F.3d at 193. Moreover, to satisfy the exhaustion requirement, the claim in question "must have been fairly presented at *each* level of the state courts." *Lines,* 208 F.3d at 159 (emphasis added). A habeas petitioner "must give the state court one *full* opportunity to resolve any constitutional issues by invoking one *complete* round of the State's established appellate review pro-

cess." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (emphasis added). A claim is "fairly presented" for purposes of the exhaustion requirement if *each* level of the state courts has been presented with the legal theory and facts underpinning the federal claim. *Evans v. Court of Common Pleas,* 959 F.2d 1227, 1231 (3d Cir.1992), *cert. dismissed,* 506 U.S. 1089, 113 S.Ct. 1071, 122 L.Ed.2d 498 (1993).

In this case, it is clear that the first time that Bastien asserted that his trial counsel was ineffective for failure to raise the *Batson* issue was in his PCRA petition. Arguably, such a claim was "waived" under state law, which requires that ineffectiveness of counsel "be raised as an issue at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant." *Commonwealth v. Hubbard,* 472 Pa. 259, 276, 372 A.2d 687, 695 n. 6 (1977). The first opportunity for challenging the effectiveness of trial counsel in this case was on direct appeal, and Bastien's appellate counsel did not raise the claim. Bastien nonetheless could have preserved his *Batson*-related claim by challenging the ineffectiveness of appellate counsel in

failing to raise the issue.[8] Bastien's PCRA petition, however, did not fault appellate counsel for failure to assert the ineffectiveness of trial counsel in relation to the *Batson* matter. It thus could be concluded that Bastien failed to preserve the *Batson* issue, failed to preserve a challenge to the effectiveness of trial counsel in relation to the *Batson* issue, and did not raise an ineffectiveness of appellate counsel claim so that federal court consideration of the matter is now foreclosed.[9]

But a decision that Bastien failed to "fairly present" the requisite ineffective assistance of counsel claim to the state courts need not rest on the adequacy of his PCRA petition. Bastien's concession that he did not raise claims concerning the ineffectiveness of trial and appellate counsel in the Pennsylvania Superior Court on his direct appeal from the denial of his PCRA petition compels the conclusion that he did not "fairly present" his ineffectiveness of counsel claims at *each* level of the state court system. As noted above, Bastien's appeal to the Superior Court from the denial of his PCRA petition raised only the ineffectiveness of PCRA counsel. The Superior Court found such a claim to be not cognizable.[10] The Superior Court,

---

8. There is, of course, "a fundamental right to effective assistance of appellate counsel on a defendants' first appeal as of right." *Phillips v. Ferguson,* 182 F.3d 769, 774 (10th Cir. 1999) (citing *Evitts v. Lucey,* 469 U.S. 387, 397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)).

9. It should be noted that, in dismissing Bastien's PCRA petition, the state trial court did not address any ineffective assistance claim in relation to the *Batson* matter. Instead, it made reference to Bastien's "jury complaints", and observed that Bastien had not presented any facts pointing to jury impropriety or prejudice and simply complained of the absence of African Americans on the jury. The trial court also observed that the Superior Court had found "nothing in the record" indicating discrimination against Bastien because of his race or national heritage. As noted above, the Superior Court was not presented with a *Batson* claim and did not have before it a record of the jury selection. Thus, the state trial court could not have relied

upon the Pennsylvania Superior Court decision in rejecting any *Batson*-type claim.

10. "The Constitution does not guarantee a right to counsel at state collateral review proceedings. Therefore, ... there can be no Sixth Amendment violation for ineffective assistance of counsel based upon representation at such proceedings." *Werts,* 228 F.3d at 189 n. 4. Moreover, the habeas corpus statute provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254." This provision has been viewed as precluding a habeas petitioner from asserting cause for a procedural default at the post-conviction stage based upon the performance of post-conviction counsel. *See Sistrunk v. Armenakis,* No. 96–6279, 1999 WL 717214 at *9 (D.Or. Sept.15, 1999). To hold otherwise would create " 'an infinite continuum of litigation in many criminal cases,' " because each new petition would

therefore, did not have the opportunity to address the merits of the ineffective assistance of counsel claims that Bastien seeks to present here.[11]

The fact that Bastien filed in the Pennsylvania Supreme Court a motion for leave to amend his petition for allowance of appeal to assert the type of ineffective assistance claims he has presented here does not satisfy the exhaustion requirement. Bastien was required to raise his federal habeas claims at each level of the state courts. *See Banks v. Horn*, 49 F.Supp.2d 400, 408 (M.D.Pa.1999) ("The exhaustion doctrine requires the defendant to present the issue to any intermediate state appellate court, if applicable, and to the state's Supreme Court."). Bastien could not skip the intermediate appellate court. Indeed, to allow a party to satisfy the exhaustion requirement by circumventing the court to which that party has an appeal as a matter of right by raising a claim in a jurisdiction's highest court, which has discretion whether to accept the appeal, would frustrate a key purpose of the exhaustion doctrine—to afford the state courts a fair opportunity to address the petitioner's federal constitutional claims. The Supreme Court held in *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989), that "fair presentation" of a claim does not encompass raising it "for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor' ...." *id.* at 351, 109 S.Ct. 1056. The desire to " 'protect the state court's role in the enforcement of federal law,' " *id.* at 349, 109 S.Ct. 1056, underlying the holding in *Castille*, supports the conclusion that a party cannot raise a claim in a trial court, ignore the claim in a state intermediate appellate court, and then satisfy the exhaustion requirement by including the claim in a discretionary petition for leave to appeal filed in the state's highest court.[12]

 In summary, Bastien did not satisfy the exhaustion requirement with respect to the ineffective assistance of counsel claims relating to the *Batson* issue. For the reasons set forth in the March 31, 2000 Memorandum and Order, Bastien no longer has any state court avenue by which to pursue his *Batson*-related claims. (*See* March 31, 2000 Memorandum Opinion at 19.) Bastien has not shown "cause" for his failure to raise the ineffective assistance of counsel issues in his appeal to the Pennsylvania Superior Court from the denial of his PCRA petition.[13] Nor has Bastien made

---

present the initial "opportunity to challenge the ineffectiveness of the prior counsel." *Breard v. Netherland*, 949 F.Supp. 1255, 1265–66 (E.D.Va.1996), aff'd, 134 F.3d 615 (4th Cir.), *cert. denied sub nom., Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). Thus, Bastien cannot escape the consequences of the failure to "fairly present" ineffective assistance of counsel claims in the state courts on the ground that his PCRA lawyer was ineffective.

**11.** As noted above, Bastien contends that the Superior Court addressed the merits of the alleged *Batson* violation on the direct appeal from his conviction. That position, however, is untenable. Bastien concedes that he did not raise a *Batson* claim in his direct appeal, and there is no basis for concluding that the Superior Court was even presented with the record of the jury selection proceedings so as to come to any conclusion with respect to a *Batson* issue. In short, at no time was the

Superior Court fairly presented with an opportunity to address any *Batson*-related issue.

**12.** The fact that Bastien did not assert in the Pennsylvania Supreme Court his ineffective assistance of counsel claims until he filed a motion for leave to amend his petition for allowance of appeal, which motion was necessarily committed to the Supreme Court's discretion and which was never decided, is yet another reason for finding that the ineffective assistance of counsel claims were not "fairly presented" to the state courts. *See Verdin v. O'Leary*, 972 F.2d 1467, 1479 n. 13 (7th Cir.1992).

**13.** In this respect, he has not shown that some "objective factor external to the defense" impeded his ability to raise the issue on his *pro se* appeal to Superior Court. Nor has he shown that the factual or legal basis for the claim was not reasonably available to him. And, as noted above, the alleged inef-

even a colorable showing of "actual innocence" sufficient to find that failure to address his *Batson*-related claims would result in a fundamental miscarriage of justice. Accordingly, Bastien is not entitled to an adjudication of his *Batson*-related issues in this federal habeas corpus proceeding. *See Sistrunk v. Vaughn,* 96 F.3d at 675 (*Batson* claim may not be adjudicated in federal habeas corpus proceeding where the defendant suffered a procedural default of the claim in state court and could not show cause or a fundamental miscarriage of justice); *Jamison v. Collins,* 100 F.Supp.2d 647, 697–98 (S.D.Ohio 2000) (*Batson*-related claims could not be adjudicated in federal habeas corpus proceeding where underlying ineffective assistance of counsel claim was itself procedurally barred).

## III. CONCLUSION

For the reasons set forth above, Bastien's habeas corpus petition will be denied.[14]

fective assistance of PCRA counsel is not grounds for excusing this procedural default.

14. Pointing out the he has been paroled to an Immigration and Naturalization Service detainer, Bastien has moved for a stay of his state court parole pending the outcome of his federal habeas corpus proceedings. (Dkt. Entries 21 and 22.) Even assuming that this Court had authority to order such a stay, the denial of his habeas corpus petition warrants dismissal of his requests for a stay of parole.